UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

SHERMAN JONES, #347321

Petitioner,

v.                                                    2:07CV292

GENE M. JOHNSON, Director of the
Virginia Department of Corrections,

Respondent.

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

This matter was initiated by petition for writ of habeas corpus under 28 U.S.C. § 2254.  The matter was referred to the undersigned United States Magistrate Judge pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and (C), and Rule 72 of the Rules of the United States District Court for the Eastern District of Virginia.

## I.  STATEMENT OF THE CASE

### A.  Background

On June 27, 2005, in the Circuit Court of Chesterfield County, Virginia, petitioner was convicted of three counts of petit larceny, third or subsequent offense, and was sentenced to serve one year and six months imprisonment.  Petitioner appealed to the Virginia Court of Appeals, but on March 1, 2006, the appeal was denied by a single judge, and on May 18, 2006, the decision was upheld by a three-judge panel.  Petitioner then appealed to the Supreme Court of Virginia, which refused the appeal on October 4, 2006.

On June 28, 2007, petitioner filed a petition for writ of habeas corpus in this Court, and on September 29, 2007, respondent filed a motion to dismiss and Rule 5 answer.  This matter is now ripe for consideration.

### B.  Grounds Alleged

Petitioner alleges the following grounds:

1.  There was no reasonable, articulable suspicion for the police to seize or search petitioner;

2.  The Commonwealth did not present sufficient evidence to prove that the mail had value;

3.  The trial court erred in finding that the Commonwealth presented sufficient evidence for an enhanced charge pursuant to section 18.2-104, of the Virginia Code; and

4.  The trial court erred in finding that the Commonwealth presented sufficient evidence to prove petitioner committed a larceny.

## II.  FINDINGS OF FACT AND CONCLUSIONS OF LAW

### A.  Motion to Dismiss Standard

In ruling on a motion to dismiss for failure to state a claim upon which relief can be granted, the complaint is construed in the light most favorable to the plaintiffs and their allegations are taken as true. See Brower v. County of Inyo, 489 U.S. 593, 598 (1989)(citing Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)); Jenkins v. McKeithen, 395 U.S. 411, 421 (1969).  The complaint should not be dismissed unless it appears to a certainty that the plaintiff can prove no facts in support of his claim which would entitle him to relief.  See Conley v. Gibson, 355 U.S. 41, 45-46 (1957); GE Inv. Private Placement Partners II v. Parker, 247 F.3d 543, 548 (4th Cir. 2001); Martin Marietta Corp. v. Int'l Telecomms. Satellite Org., 991 F.2d 94, 97 (4th Cir. 1993).  The courts must construe the complaint liberally in favor of the plaintiffs, even if recovery appears remote and unlikely.  In ruling on a 12(b)(6) motion, the court primarily considers the allegations in the complaint but may consider attached exhibits and documents incorporated by reference.  See Simons v. Montgomery County Police Officers, 762 F.2d 30, 31 (4th Cir. 1985); Wolford v. Budd Co., 149 F.R.D. 127, 129-32 (W.D. Va. 1993).

### B.  Standard of Review for State Court Findings

The federal statute regarding review of state court habeas corpus actions provides that:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(2000).

This standard, adopted by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub.L.No. 104-132, is consistent with the Fourth Circuit's interpretation of 28 U.S.C. § 2254(d) prior to the passage of the new law.  In Fields v. Murray, 49 F.3d 1024 (4th Cir. 1995), the court held that a review of a state court finding, which is entitled to a presumption of correctness, compels the habeas court to accord a high measure of deference to the state court.  See id. at 1032-33 (citing Rushen v. Spain, 464 U.S. 114, 120 (1983); Sumner v. Mata, 455 U.S. 591, 598 (1982)).  As stated in Marshall v. Lonberger, 459 U.S. 422 (1983), "[t]his deference requires that a federal habeas court more than simply disagree with the state court before rejecting its factual determinations.  Instead, it must conclude that the state court's findings lacked even 'fair [] support' in the record."  Id. at 432.

### C.  Petitioner's Claims are Exhausted and are Subject to Federal Review.

The exhaustion requirement dictates that a petitioner must first present his claims for relief to state courts before a petition for habeas corpus may be granted by the federal courts.

> (b)(1)  An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that--
>
> (A)  the applicant has exhausted the remedies available in the courts of the State; or
>
> (B)(i)  there is an absence of available State corrective process; or
>
> (ii) circumstances exist that render such process ineffective to protect the rights of the applicant.
>
> . . . .
>
> (c)  An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

28 U.S.C. §§ 2254(b)-(c)(2000).

A claim raised in a federal petition for writ of habeas corpus must be the same claim as that presented in state proceedings.  See Picard v. Connor, 404 U.S. 270, 275-76 (1971); Pitchess v. Davis, 421 U.S. 482, 487 (1975); Joseph v. Angelone, 184 F.3d 320, 325 (4th Cir. 1999); Beck v. Angelone, 113 F. Supp.2d 941, 960-61 (E.D. Va. 2000); see also  Anderson v. Harless, 459 U.S. 4, 6 (1982); Duncan v. Henry, 513 U.S. 364, 365 (1995); Satcher v. Pruett, 126 F.3d 561, 573 (4th Cir. 1997).  Respondent concedes, and the Court agrees, that for purposes of federal review, petitioner's claims are exhausted.

### D.  Claims 1 and 4 are Procedurally Defaulted.

Under Virginia law, a claim included in a petition for habeas corpus will be barred if an objection was not raised at trial and the objection presented on direct appeal. In <u>Coppola v. Warden of Virginia State Penitentiary</u>, 282 S.E.2d 10 (Va. 1981), the Supreme Court of Virginia held that to preserve an issue for appeal and for a habeas corpus proceeding, the issue must be timely objected to at trial. Rule 5:25 of the Supreme Court of Virginia states the contemporaneous objection rule:

> Error will not be sustained to any ruling of the trial court or the commission before which the case was initially tried unless the objection was stated with reasonable certainty at the time of the ruling . . . .

Va. S.Ct. R. 5:25.

The Supreme Court has stated that: "Under Virginia law, failure to raise a claim on direct appeal from a criminal conviction ordinarily bars consideration of that claim in any subsequent state proceeding." <u>Smith v. Murray</u>, 477 U.S. 527, 533 (1986). The Fourth Circuit has held that if a claim is procedurally barred in Virginia courts because it was not brought on direct appeal, it will also be barred in the federal system. <u>Bassette v. Thompson</u>, 915 F.2d 932 (4th Cir. 1990).[1] In <u>Whitley v. Bair</u>, 802 F.2d 1487 (4th Cir. 1986), the court held that the failure of an inmate to directly appeal his conviction to the Supreme Court deprives

> the Virginia Supreme Court of the opportunity to rule on the merits of his claims. We consider such failure to constitute a violation of the requirements of Rule 5:21, which applies to appeals

---

[1] The court in <u>Bassette</u> relied on section 8.01-654(B)(2) of the Virginia Code. <u>Bassette</u>, 915 F.2d at 936. Section 654 (B)(2) states: "No writ shall be granted on the basis of any allegation the facts of which petitioner had knowledge at the time of filing any previous petition." VA. CODE ANN. § 8.01-654 (B)(2)(Michie 1992).

> of all Virginia cases, civil or criminal, and
> conclude that such violation constitutes a
> procedural default sufficient to preclude federal
> court review of the merits . . . .

Id. at 1502 (citing Va. S.Ct. R. 5:21, repealed and reinstated in substantially similar form as, Va. S.Ct. R. 5:17, 5:25). In Slayton v. Parrigan, 205 S.E.2d 680, 682 (Va. 1974), the Virginia Supreme Court stated a similar proposition: "[a] petition for a writ of habeas corpus may not be employed as a substitute for an appeal or a writ of error." The Supreme Court of the United States recently addressed the same issue in Coleman v. Thompson, 501 U.S. 722 (1991). The Court held that the doctrine of procedural default will bar a federal habeas petition when a prisoner fails to meet a state procedural requirement. Id. at 750. Speaking for the Court, Justice O'Connor said:

> We now make it explicit: In all cases in which
> a state prisoner has defaulted his federal claims
> in state court pursuant to an independent and
> adequate state procedural rule, federal habeas
> review of the claims is barred unless the prisoner
> can demonstrate cause for the default and actual
> prejudice as a result of the alleged violation of
> federal law, or demonstrate that failure to
> consider the claims will result in a fundamental
> miscarriage of justice. . . . We now recognize the
> important interest in finality served by state
> procedural rules, and the significant harm to the
> States that results from the failure of federal
> courts to respect them.

Id. at 750.

Moreover, the federal court is required to dismiss a procedurally defaulted claim absent a showing of justifiable cause resulting in actual prejudice. Wainwright v. Sykes, 433 U.S. 72 (1977). Petitioner has not made a showing of justifiable cause for his failure to appeal the aforementioned issues to the Court of Appeals and the

Supreme Court of Virginia.  Therefore, the issue of actual prejudice need not be addressed.

Petitioner alleges that "[t}here was no reasonable articulable suspicion for the police to seize or search" him, (Claim 1).  The Virginia Court of Appeals denied the claim, holding that petitioner failed to present the issue of an illegal search at trial.

During a motion to suppress hearing, petitioner's counsel stated that there were "two parts to the motion."  (2/16/05 Tr. at 38.) However, counsel's entire argument was limited to the stop itself, attacking the officer's lack of sufficient information, the informants' lack of experience in law enforcement, the driver's license identification, and petitioner's testimony that he did not feel free to leave.  Counsel concluded his argument by stating that the question was whether the "investigatory stop" was legal, and he indicated that the "stop" was the basis for the motion to suppress.

Since petitioner has failed to assert why the search was illegal, the Virginia Court of Appeals did not err in holding that it was barred from considering the issue under Rule 5A:18, Rules of the Supreme Court of Virginia.  This portion of Claim 1 is procedurally defaulted and should be DISMISSED.

Petitioner alleges that the trial court erred in finding that the Commonwealth presented sufficient evidence to prove petitioner committed larceny, (Claim 4).  The Virginia Court of Appeals held that this claim was also barred from consideration on appeal pursuant to Rule 5A:18, since petitioner had not presented the issue at trial.  The Virginia Court of Appeals further held that the Rule 5A:18 exceptions did not apply, since petitioner failed to invoke the exceptions.

Petitioner alleged in his appeal to the Virginia Court of Appeals that the issue was preserved for appeal at trial and sited the suppression hearing transcript:

> I renew my motion to suppress . . . , knowing the Court has ruled against that.  Second, in regard to larceny, Judge, to find my client guilty beyond a reasonable doubt of these, I think this Court has the one prior conviction of petty larceny.  I think that is as far as the Court can look.  In regard to the value, I don't think the Court has any testimony in regard to even some value in these cases.  Lastly, Judge, what we have is what appears to be one kind of a string of events.  It is not a continued event for the Court seeing fit to convict.  I think the Court should convict him of one petty larceny.

(2/16/05 Tr. at 75.)   Counsel's argument cannot be construed as presenting the issue of the sufficiency of the evidence for a larceny conviction.   Thus, the Virginia Court of Appeals did not err in its finding that Rule 5A:18 barred its consideration of the matter.   The claim is procedurally defaulted and should be DISMISSED.

### E.  The Initial Stop was not Illegal (Claim 1).

Petitioner alleges that Officer Talley lacked "reasonable, articulable suspicion" for the initial stop.  The trial court denied the motion at the suppression hearing, ruling:

> Given a description, the fist [sic] gentleman couldn't recall if he told them what type of shirt or other things that the black male was wearing, but with the backpack, a jersey, riding a bicycle. He pulls up.  There is a gentleman who points him to a black male riding a bicycle. [Talley] said: Can I talk to you for a minute? [Talley] has reason to, based on these folks saying this and giving there [sic] names, if not an anonymous person. [Talley] has credible evidence that there is something untoward going on here, and he has a consensual stop with Mr. Jones.  Can I stop and speak to you a minute? There is nothing wrong with the stop and the motion to suppress is denied.  It is not a stop that is not a consensual encounter.

(2/16/05 Tr. at 43.)

8

Thus, it is not clear whether the trial court denied the motion on the basis that the initial stop was consensual or because the stop was proper. Nevertheless, the record demonstrates that the state court's decision is supported under both theories.

Prior to the stop, Talley received a dispatch stating that an individual was observed rummaging through mailboxes. The suspect was a black male on a bicycle with a blue jersey and a backpack. The dispatch also stated that an informant was in his vehicle following the suspect. Talley arrived in the area within three minutes, and when he arrived, the informant pointed toward petitioner, who matched the suspect's description. Talley pulled into a driveway ahead of petitioner, parked and exited his car, and walked toward petitioner. As he approached, Talley asked petitioner if he could talk to him, and petitioner agreed. When asked if he had stopped at any mailboxes, petitioner said he had not. Talley then asked petitioner if he could look in the backpack, and he advised petitioner that he could leave if there was no mail found. When petitioner opened the backpack, Talley saw mail in the bottom of the bag. At some point during the exchange, Talley asked for petitioner's driver's licence, and petitioner provided the identification.

Petitioner's testimony at the suppression hearing was conflicting regarding whether the search was consensual. Petitioner stated that his first interaction with Talley was when Talley pulled up beside him in his police car as he was riding down the road on his bicycle. Petitioner testified that when asked by Talley to pull into a driveway, he complied, and he said that he did not feel free to leave. Talley then asked petitioner a few questions, grabbed the backpack from petitioner, and then opened it up.

Despite the conflicting testimony, the trial court's finding that the encounter was consensual was not "based on an unreasonable

determination of the facts in light of the evidence presented in the State court proceeding." 22 U.S.C. § 2254(d) (2000). It cannot be said that the finding "lacked even 'fair [ ] support in the record.'" See Marshall v. Lonberger, 459 U.S. 422, 432 (1983).

Further, the record supports the finding that the initial detention was a proper stop pursuant to Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868 (1958). Citing Florida v. J.L., 529 U.S. 266, 120 S.Ct. 1375 (2000), petitioner concedes that the informants provided an accurate description of his appearance and that he was the person that one of the informants pointed to when Talley arrived in the area. However, petitioner challenges whether the information provided by the informants provided reasonable suspicion of criminal activity. Under the totality of the circumstances analysis to determine whether reasonable suspicion existed based on an informant's report, "an informant's 'veracity,' 'reliability' and 'basis of knowledge' are all highly relevant." Illinois v. Gates, 462 U.S. 213, 230 (1983); see Alabama v. White, 496 U.S. 325, 329 (1990)("Reasonable suspicion . . . is dependent upon both the content of information possessed by police and its degree of reliability. Both factors--quantity and quality--are considered in the 'totality of the circumstances--the whole picture' that must be taken into account when evaluating whether there is reasonable suspicion." (citations omitted))

The record supports the finding by the trial court that Talley had reasonable suspicion to stop petitioner. Two disinterested informants called the police because they personally witnessed petitioner rummaging through mailboxes. One informant remained on the phone with the police and personally directed Talley to petitioner. The other informant left his name and contact information. Although Talley did not personally observe petitioner rummaging through mailboxes, the

information provided by the informants had the requisite veracity, reliability, and basis of knowledge to provide Talley with reasonable suspicion.  If the trial court's ruling was based on a finding of Terry stop, it cannot be said that this decision "was contrary to, or involved an unreasonable application of clearly established Federal law, as determined by the Supreme Court of the United States."  28 U.S.C. § 2254(d)(1) (2000).  The claim is without merit and should be DISMISSED.

## F.  The Evidence at Trial was Sufficient to Prove that the Mail had Value.

Petitioner claims that "[t]he Commonwealth did not present sufficient evidence to prove that the mail had value," (Claim 2).  Petitioner was convicted of three counts of felony petit larceny.  The petit larceny statute provides:

> Any person who: 1. Commits larceny from the person of another of money or other thing of value of less than $5, or 2. Commits simple larceny not from the person of another of goods and chattels of the value of less than $200, except as provided in subdivision (iii) of § 18.2-95, shall be deemed guilty of petit larceny, which shall be punishable as a Class 1 misdemeanor.

VA. CODE § 18.2-96.

On its face, section 18.2-96, of the Virginia Code, does not require that the stolen article have any minimum value.  However, the Supreme Court of Virginia has held that the article must have some value, even "if it be worth less than the smallest coin known to the law." Evans & Smith v. Commonwealth, 308 S.E.2d 126, 129 (Va. 1983)(citing Wolverton v. Commonwealth, 75 Va. 909, 913, 1881 WL 6316 (Va. 1881)).

Petitioner points out that under Owolabi v. Commonwealth, 428 S.E.2d 14 (Va. 1993), "[b]ank notes, checks and other writings and papers of value were not the subject of larceny at common law.  However the taking of the paper on which they were written could be larceny."  428 S.E.2d at 14, 15 (citations omitted); see also Foster v. Commonwealth,

44 606 S.E.2d 518, 520-21 (Va. 2004).   In   _Owolabi_, the Commonwealth charged the defendant with grand larceny for stealing credit cards with credit limits greater than $200.00.   _Id._ at 81, 16.   However, because the Commonwealth failed to prove that the actual credit cards themselves were worth more than $200.00, "the defendant could be convicted only of petit larceny, not grand larceny."   _Id._

        In the present case, petitioner was charged with three counts of petit larceny, therefore, the Commonwealth was only required to prove that the stolen articles under each petit larceny charge had some value, even if the values could not be specifically proven.   _Evans & Smith v. Commonwealth_, 308 S.E.2d 126, 129 (Va. 1983).   At petitioner's trial, three Commonwealth witnesses testified regarding the value of the mail that was found in petitioner's backpack.   Ronald Rouvere testified that the courtesy checks in his name had no value unless he obtained and acted upon them.   (2/16/05 Tr. at 53.)   However, since they were stolen, he was not given the opportunity to do so.   Robert Miller testified that while the courtesy checks had no monetary value, they were valuable because they contained his personal information.   (2/16/04 Tr. at 57.)   William Porter testified that he would have shredded the credit card application that was mailed to him because he did not want other people to get it and use it.   (2/16/05 Tr. at 61.)   Based on the testimony of the witnesses, and the exhibits, there was sufficient evidence to demonstrate that each article of stolen mail had value.   The value of the mail was either the personal information contained in the mail or in deprivation of the intended recipient's ability to obtain and act upon the mail.   Further, as the Court of Appeals of Virginia noted, "under the common law, the paper, ink, envelope and canceled postage had some value, however slight."   (_Citing_ _Wolverton_, 75 Va at 913.)   The claim is without merit and should be DISMISSED.

### G.   The Evidence at Trial was Sufficient to support an Enhanced Charge Pursuant to section 18.2-104(b) of the Virginia Code.

Petitioner claims that the trial court erred in finding that sufficient evidence was presented by the Commonwealth for an enhanced charge under section 18.2-104, (Claim 3).   The felony petit larceny statute provides:

> When a person is convicted of an offense of larceny . . . and it is alleged in the warrant, indictment or information on which he is convicted, and admitted, or found by the jury or judge before whom he is tried, that he has been before convicted in the Commonwealth of Virginia or in another jurisdiction for any offense of larceny . . . regardless of whether the prior convictions were misdemeanors, felonies or a combination thereof, he shall be confined in jail not less than thirty days nor more than twelve months; and for a third, or any subsequent offense, he shall be guilty of a Class 6 felony.

VA. CODE § 18.2-104.

At trial, the Commonwealth introduced two prior larceny conviction orders as evidence to support the enhanced felony charge.   The first order, admitted without objection, was entered September 24, 2002, and revealed a conviction for "Petit Larceny/Previous Convictions (F)," in violation of sections 18.2-96 and 18.2-104, of the Virginia Code. (2/16/05 Tr. at 71.)   The order contained four aliases, two social security numbers, and two dates of birth for petitioner.

The second order, entered January 23, 1996, revealed a conviction for concealment in violation of section 18.2-103, of the Virginia Code.   There was only one social security number and one date of birth on the order for petitioner.   Petitioner challenged the second order, claiming that he was not the person convicted in that order because the last four digits of the social security number were not the same as his.   However, on direct examination petitioner confirmed his identity as the person listed in the order.

The 2002 order reveals that petitioner uses at least two social security numbers and three birth dates, and petitioner's testimony validated the 1996 conviction order. Based on the evidence, the trial court did not err in finding that petitioner is the person identified in both conviction orders. Additionally, as the Virginia Court of Appeals noted, even if the 1996 order "was somehow infirm, . . . the 2002 order provided sufficient evidence of two prior petit larceny convictions. As an element of the [2002 felony conviction], the Commonwealth had the burden to prove beyond a reasonable doubt that appellant had been sentenced twice previously for larceny or offenses deemed larceny." Thus, the 2002 conviction order alone, entered without objection, is sufficient evidence that petitioner had at least two prior larceny convictions. The claim is without merit and should be DISMISSED.

### III.  RECOMMENDATION

For the foregoing reasons, the Court recommends that petitioner's petition for writ of habeas corpus be DISMISSED and respondent's motion to dismiss be GRANTED. Petitioner has failed to demonstrate "a substantial showing of the denial of a constitutional right." Therefore, it is recommended that the Court decline to issue any certificate of appealability pursuant to Rule 22(b) of the Federal Rules of Appellate Procedure. See Miller-El v. Cockrell, 123 S.Ct. 1029, 1039 (2003).

### IV.  REVIEW PROCEDURE

By copy of this Report and Recommendation, the parties are notified that pursuant to 28 U.S.C. § 636(b)(1)(C):

1. Any party may serve upon the other party and file with the Clerk written objections to the foregoing findings and recommendations within ten days from the date of mailing of this report to the objecting

party, computed pursuant to Rule 6(a) of the Federal Rules of Civil Procedure, plus three days permitted by Rule 6(e) of said rules.  See 28 U.S.C. § 636(b)(1)(C)(2000); FED.R.CIV.P. 72(b).  A party may respond to another party's objections within ten days after being served with a copy thereof.

2. A district judge shall make a <u>de novo</u> determination of those portions of this report or specified findings or recommendations to which objection is made.

The parties are further notified that failure to file timely objections to the findings and recommendations set forth above will result in waiver of right to appeal from a judgment of this court based on such findings and recommendations.  See <u>Thomas v. Arn</u>, 474 U.S. 140 (1985); <u>Carr v. Hutto</u>, 737 F.2d 433 (4th Cir. 1984); <u>United States v. Schronce</u>, 727 F.2d 91 (4th Cir. 1984).

_____/s/_____

James E. Bradberry<br>
United States Magistrate Judge

Norfolk, Virginia

<u>March 11, 2008</u>

<u>Clerk's Mailing Certificate</u>

A copy of the foregoing Report was mailed this date to each of

the following:

   Sherman Jones, #347321, <u>pro</u> <u>se</u>
   Haynesville Correctional Ctr. Unit #17
   P.O. Box 39
   Haynesville, VA  22472

   Alice T. Armstrong, Esq.
   Assistant Attorney General of Virginia
   900 E. Main Street
   Richmond, VA  23219

       Fernando Galindo, Clerk


       By _____
          Deputy Clerk

       _____, 2008

16